## SUPREME COURT.

JAMES L. WILDE, as executor, &c., agt. MARY WILDE *et al.*

*Will — construction of — Interest on legacies, when and from what time allowed.*

Testator gave a daughter a legacy of $5,000 and a brother a legacy of $2,000. He further directed his executor to invest a sum sufficient to pay his widow during her life, $200 per annum, and another sum sufficient to pay a son $100 per annum, during life. He then gave the *residue* of his estate to the daughter to whom he had given the $5,000 except the *principal* of the two sums invested to pay the annuities to his son and widow, "which I direct to go to my heirs-at-law." The executor invested sums sufficient to produce the annuities when there was not sufficient to pay the $5,000 legacy to the daughter, and that of $2,000 to the brother, in full :

*Held,* 1. That on the death of the widow and the son, the principal of the sums invested to produce these annuities should be applied to the payment of the balances unpaid on the $5,000 and the $2,000 legacies.

2. That such legatees were entitled to interest upon the upaid balances of their legacies, commencing one year after the granting of letters testamentary.

*Montgomery Circuit, October,* 1879.

THE testator died in 1859 leaving his will in which he first gave to his executors, in trust and with power of sale, his farm and also his farm stock and implements, with direction to sell them, except two cows and household furniture which he bequeathed to his wife.

He gave to his wife $200 per year during her lifetime, and to his son Amos $100 per year during his lifetime. He directed that a sum of money sufficient to produce said annuities at seven per cent per annum be invested.

He bequeathed to his brother, Perry Yates, $2,000 to be paid to him "as soon as convenient after my decease," and to his daughter, Mary Wilde, $5,000, to be paid to her " as soon as convenient after my decease."

Lastly, he gave the residue of his estate to Mary Wilde, except the principal of the above legacies, with respect to which he uses these words, " which I direct to go to my heirs at law."

The plaintiff, as executor named in the will after probate thereof and letters testamentary, took upon himself the administration. He sold the real and personal estate, converted the same into money, and invested $2,857.34 to raise the annuity for the widow and $1,428.66 for the son. He paid Perry Yates upon account of his legacy $1,277.81 and to Mary Wilde upon account of her legacy $3,192.52. He has now about $300 in his hands other than the principal of said annuities. The testator's widow died March 29, 1878. His children, Amos and Mary Wilde, are the testator's only heirs-at-law. The question is, whether his children take the principal of the widow's annuity, as the legatees under the bequest thereof to them, or as heirs at law of the testator, as if he were intestate as to that sum, or whether that principal is a fund from which the unpaid balance of the legacies bequeathed to Perry Yates and Mary Wilde is to be paid, or whether it is to be applied pro rata among the several legatees, Perry Yates and Mary Wilde, so named in the will, or Mary Wilde and Amos Yates the persons forming the class to whom, as " heirs at law," the same was bequeathed.

*S. P. Heath*, for plaintiff.

*N. C. Moak*, for defendant Mary Wilde.

*Smyth & Nellis*, for defendant Amos Yates.

*Winegar & Heath*, for administrators of Perry Yates.

LANDON, *J.* — The intent of the testator, so far as it can be gathered from the whole will, must afford the key to the construction.

By the previous provisions of his will he had made exact bequests to his wife, his brother and his two children. To make the provision for his wife, and son he had provided that a sum large enough to yield the income he bequeathed to them should be taken from the bulk of his estate and invested. No doubt he supposed that his estate was ample to provide every dollar which he bequeathed in exact sums to the persons he named, and that there then would remain a residue to consist of two parts, one part a balance, larger or smaller, remaining after his executor had paid the legacies to his brother and daughter, and had invested the principal to raise the annuity for his widow and son, and the other part that very principal from which the annuities must be raised. His mind devoted the balance to his daughter as a still further "token of his affection." That balance, to his mind, would be payable immediately.

He could not tell when the other part of that residue namely, the principal sum to be set aside, would be payable.

His widow must die before one part of it could be payable, and his son before the other.

His daughter might die long before either. It was improbable that he could name anybody then to be alive, and so he named his "heirs at law."

Still searching for his intent, suppose it had been asked him, in case of an insufficiency of funds to pay in full both the legatees, whom he called by name, and the "heirs at law," whom he could not name, which of them should be paid in full, can there be any doubt that he would have preferred the former to the latter — the known to the unknown? This view of the testator's intent leads to the result that the principal sum now available by the death of the widow forms part of the estate of the testator from which the legacies which were given Perry Yates and Mary Wilde should be paid.

It is interesting to notice that these legacies were directed to be paid "as soon as convenient." Of course the testator

did not anticipate the shrinkage in his estate which has occurred, and this long postponement of payment. It may safely be affirmed, however, that he never contemplated such a contingency as that they should not be paid when it should become convenient.

The foregoing construction finds support in the case of *Arnold* agt. *Arnold* (2 *My. & Keene*, 374), a case cited with approval in 2 *Roper on Legacies* (1510, 1511), and in *Williams on Executors* (6 *Am. ed.*, 1462.)

If, after paying the unpaid balance of these legacies in full, with interest, any balance remains, it should be paid to the heirs at law.

With respect to the interest, the general rule is, that it begins to run from the date when the legacy becomes due. This is fixed by statute at one year from the granting of letters testamentary, unless the same is directed by the will to be sooner paid (2 *R. S.*, 90, *sec.* 43). In this case it seems to be peculiarly just that the interest should be paid. There were not enough assets to enable the executor to set aside the principal from which to raise the annuities, and also pay the brother and daughter the legacies bequeathed to them.

The executor, with the approval of the surrogate, provided, without abatement, the principal fund for the annuities, thus compelling the brother and daughter to wait for a portion of their legacies until now. Had the deficiency been apportioned *pro rata*, the annuities must have been abated to some extent, and the brother and daughter, as legatees of exact sums, would have received large payments. If they are allowed interest upon what they have so long waited to receive, amends will be made for the apparent injustice done them, and the scheme of the testator will be as nearly accomplished as circumstances will permit.